UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RUTH CROOKS and WANDA MALCOM,** )<br>)<br>)<br>**Plaintiffs,** )<br>)<br>)<br>**v.** )<br>)<br>)<br>**MURROW'S TRANSFER, INC.,** )<br>**and BRADLEY POWELL,** )<br>)<br>)<br>**Defendants.** ) | Civil Action Number<br>**2:22-cv-00263-AKK** |

## MEMORANDUM OPINION

Murrow's Transfer, Inc. removed this action on grounds of diversity jurisdiction. Doc. 1. Now before the court is Ruth Crooks' and Wanda Malcom's motion to remand, doc. 5, in which they argue that Murrow's Transfer fails to establish the requisite amount in controversy or, at the least, untimely filed its notice of removal. For its part, Murrow's Transfer contends that it timely removed the case after Crooks' deposition testimony made clear that the amount in controversy exceeds $75,000. *See* doc. 7. The motion is briefed, docs. 7; 9, and as explained below, it is due to be granted.

**I.**

Federal courts have limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and, in relevant part, may hear cases between diverse citizens where the amount in controversy exceeds $75,000, *see* 28 U.S.C.

§ 1332.  "If a state-court complaint states a case that satisfies [these] federal jurisdictional requirements, a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1446(b)."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010).  The removing defendant retains the burden of proving the jurisdictional requirements.  *See id.* at 1061.

"[I]f removability is not apparent from the initial pleading, but [it] is later ascertainable that the case 'is or has become removable,' removal is governed by the second paragraph of § 1446(b)."  *Id.* at 1060 n.2.  In relevant part, this paragraph provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).  "Other paper" can include responses to requests for admission, responses to interrogatories, and deposition testimony.  *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (collecting examples).

To evaluate the propriety of removal, "the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Id.* at 1213.  With respect to diversity jurisdiction, if a plaintiff makes "an unspecified demand for damages in state court,"

the removing defendant "must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Roe*, 613 F.3d at 1061. Generally, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). At the same time, "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

## II.

This case is no stranger to the court. Crooks and Malcom initially filed this lawsuit in Alabama state court, seeking damages for injuries they allegedly sustained in a collision between their vehicle and a Murrow's Transfer tractor-trailer. *See Crooks v. Murrow's Transfer, Inc.*, No. 2:21-cv-00507-AKK, 2021 WL 2042943 (N.D. Ala. May 21, 2021). *See also* docs. 1 at 2–3; 5 at 1. Murrow's Transfer removed the case, and this court subsequently remanded it for lack of subject matter jurisdiction.[1] *Crooks*, 2021 WL 2042943, at *2. Discovery commenced thereafter,

---

[1] Specifically, the court found that "the general description of the alleged injuries and damages" rendered the compensatory damages value "speculative" and that "[the] demand for punitive damages alone . . . [was] not sufficient to show that the amount in controversy requirement [was] met." *Crooks*, 2021 WL 2042943, at *2.

3

and Murrow's Transfer has removed the case on diversity jurisdiction grounds based on information that apparently emerged during Crooks' deposition. *See* doc. 1.

The parties cite several "moments" during discovery as especially relevant to the issue of remand. On November 30, 2021, Crooks responded to Murrow's Transfer's interrogatories and requests for production. Doc. 5 at 26. In her responses, Crooks asserted that she received medical treatment at St. Vincent's East and MedplexMD Injury following the accident, with bills of $6,916.50 and $45,342.29, respectively, and that she "claim[ed] damages for medical bills, pain and suffering, permanent injury, mental anguish, property damage and rental car." *Id.* at 27, 29. At this time, Crooks also apparently produced documents and medical records indicating (1) injuries to her neck, shoulder, and back; (2) surgery for rotator cuff tendon tears; and (3) rental-car charges and repairs estimates associated with the collision. *Id.* at 8.

On December 14, 2021, Crooks and Malcom served requests for admission in which they asked the defendants to admit that the Medplex charges "[were] reasonable and necessary for the treatment of injuries proximately caused by the subject accident of November 3, 2020." *Id.* at 5. Murrow's Transfer answered that it "[could not] truthfully admit or deny the answer to this request" because it "require[d] expert testimony." *Id.* at 6.

On January 27, 2022, the defendants issued a subpoena to Surgical Institute of Alabama.  Doc. 1 at 7 n.3.  SIA subsequently provided records of Crooks' shoulder surgery, which apparently cost $24,824.  *Id.* at 7.  *See also* doc. 5 at 12.

On February 8, 2022, the defendants deposed Crooks, who testified, apparently for the first time, that she (1) experiences mini strokes, the first one dating back several years; (2) had one such stroke just after the accident; and (3) has had two more since then.  Doc. 1-8 at 15–16.  She also appears to have experienced a mini stroke during her deposition.  *See* doc. 7 at 5.  Upon questioning, she explained that she seeks damages for injuries to her shoulders, including for the surgery; for mental anguish; and for out-of-pocket expenses, including her rental car payments and insurance deductible.  Doc. 1-8 at 38–39.

Murrow's Transfer removed the case on February 28, 2022, claiming that "[Crooks'] deposition, coupled with the records she provided in discovery evidencing her treatment and damages, clearly and unequivocally shows the amount in controversy exceeds $75,000."  Doc. 1 at 4.

### III.

Crooks and Malcom contend that even if the amount in controversy exceeds $75,000, which they dispute, that fact was revealed in their interrogatory responses in November 2021.  Doc. 5.  On their account, Murrow's Transfer therefore failed

to remove the case within 30 days of receiving the "other paper" allegedly demonstrating that the case was removable. *Id.*; *see* 28 U.S.C. § 1446(b).

"[A] defendant must remove within thirty days of receiving the document," including interrogatory responses or deposition testimony, "that provides the basis for removal." *See Lowery*, 483 F.3d at 1212–13 (citing 28 U.S.C. § 1446(b)). Because Murrow's Transfer did not remove the case until February 28, 2022, doc. 1, the question is which "other paper" arguably pushed the amount in controversy over $75,000, if at all. *See* 28 U.S.C. § 1446(b)(3). Murrow's Transfer claims that Crooks' February 2022 deposition made this clear, while Crooks and Malcom assert that the deposition merely restated what Crooks indicated in the November 2021 discovery. *Compare* doc. 1 *and* doc. 7 *with* doc. 5.

Even assuming that any of this evidence supports the requisite amount in controversy, the court agrees with Crooks and Malcom. In fairness, Crooks' responses to the interrogatories and requests for production in November 2021 did not explicitly reference her mini strokes. However, her interrogatory response asserted that she "claim[s] damages for medical bills, pain and suffering, permanent injury, mental anguish, property damage and rental car," doc. 5 at 29, and her deposition testimony essentially restated as much, *see* doc. 1-8 at 15–16, 38–39. Put another way, Crooks' mini strokes seem to fall within the damages she articulated in November 2021, and the deposition testimony reads as slight elaboration rather

6

than as new information. In fact, Crooks did not testify that she would specifically seek damages for her mini strokes,[2] nor can she realistically do so.[3] Because these doubts favor remand, *Univ. of S. Ala.*, 168 F.3d at 411, the February 2022 deposition testimony did not provide a new basis for removal.

### IV.

Additionally, even if the February 2022 deposition supplied new information providing a potential basis for removal, Murrow's Transfer fails to sufficiently substantiate the alleged amount in controversy.

At the outset, the parties seem to agree that the amount in controversy is at least $52,258.79 because of Crooks' medical bills from St. Vincent's and Medplex. *See* docs. 1 at 6–7; 5 at 4; 7 at 4. Murrow's Transfer also points to the repairs estimates and rental-car charges totaling $6,273.33 that Crooks produced in

---

[2] Rather, Crooks testified that prior to the accident, she had experienced at least one mini stroke and that following the accident, she had several more. *See* doc. 1-8 at 15–16. As to the "permanent injuries" she claimed, the exchange went as follows:

> Q: . . . For your permanent injury, what permanent injuries are you claiming?
> A: My shoulders, my surgery.
> Q: Okay. You're not claiming anything for your neck or your back?
> A: I have problem with it, but I haven't – well, I'm claiming for all of my injuries, for my shoulder, my back, and my neck. As far as, you know, my shoulder includes my surgery.

*Id.* at 38.

[3] To state the obvious, given that Crooks has a history of mini strokes that predates the accident at issue and no doctor has opined on a causal link between the accident and the post-accident mini strokes, Crooks would face an uphill battle if she were to seek damages for the mini strokes.

discovery. Doc. 7 at 4 (citing doc. 1-10). These documents, which Murrow's Transfer received in November 2021, reasonably bring the amount in controversy to at least $58,532.06.

Murrow's Transfer argues for the inclusion of the $24,824 bill it received from SIA because it can apparently introduce this expense at trial on top of the other medical bills.[4] Docs. 1 at 6–7; 7 at 8. Crooks and Malcom respond that the court should exclude the SIA bill from the amount in controversy because the Medplex bill they produced purportedly includes the SIA charges: Medplex had its own arrangement with SIA, so Crooks never had an obligation to pay the SIA bill. Docs. 5 at 4, 12, 14–15; 9 at 2. Crooks and Malcom thus contend that they do not claim damages stemming from the SIA bill and would not introduce those charges at trial. *See id.*

As proof of SIA's "separate financial arrangement" with Medplex, Crooks and Malcom cite the insurance claim form for the SIA expenses, which reads "LETTER OF PROTECTION (MEDPLEX)." Docs. 5 at 12; 9 at 1–2. They also provide an affidavit from Michael Mitchell, Medplex's director of operations, who avers that the "[SIA] bill was produced in error because those charges [were]

---

[4] Alabama Code § 12-21-45 allows a defendant to introduce evidence at trial that a collateral source has paid or will reimburse a plaintiff for medical expenses, at which point "a plaintiff may present evidence as to the cost of obtaining the reimbursement or payment of medical or hospital expenses, including evidence of any right of subrogation claimed by the collateral source." *Washington v. United States*, 17 F. Supp. 3d 1154, 1158 (S.D. Ala. 2014). *See also* ALA. CODE § 12-21-45(a).

included in the total Medplex bill at the contracted rate [Medplex] ha[s] with that facility." *Id.* at 14. Mitchell further explains that "[o]n the itemized Medplex bill, . . . the 7/7/21 charge for $3,230.30 (code 29824) and for $2,991.55 (code 29823) represent the two charges that appear on the Claim Form produced by [SIA]" and that Crooks "does not owe any balance to [SIA] because those charges are included in the $45,342.29 bill" from Medplex. *Id.* at 14–15. On this evidence, the court has doubts about whether the SIA bill covers separate medical expenses for which Crooks owes reimbursement, and "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, the court will not factor the SIA bill into the amount in controversy.

This leaves Murrow's Transfer with a potential amount in controversy of just under $60,000 in medical bills, plus the unquantified damages for pain and suffering, permanent injury, and mental anguish. *See* doc. 5 at 29. Murrow's Transfer contends that even if the court excludes the SIA bill, these damages still satisfy the jurisdictional requirement. Doc. 7 at 4 n.1. However, their value remains speculative. Even assuming Crooks' deposition provided new information about her mini strokes, Murrow's Transfer does not supply evidence reasonably demonstrating the damages value of these strokes, and the court cannot rely on guesswork. *See Pretka*, 608 F.3d at 752. And although Crooks may have elaborated on her pain,

suffering, and anguish at her deposition, doc. 7 at 6, Murrow's Transfer also does not reasonably substantiate the value of these damages, such as by citing specific testimony from Crooks.  *See* doc. 5 at 6–7.  Construing these uncertainties against Murrow's Transfer, as the court must, the court finds that remand is warranted.

## V.

To close, Crooks and Malcom's motion to remand, doc. 5, is due to be granted because the February 2022 deposition did not reveal new information that would establish this court's subject matter jurisdiction, and Murrow's Transfer cannot otherwise substantiate the requisite amount in controversy.  These doubts warrant remand.  A separate order follows.

**DONE** the 13th day of April, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE